IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                      CRIMINAL ACTION NO. 2:05CR37-2

JASON HULL,

      Defendant.

## REPORT AND RECOMMENDATION/OPINION

On the 11th day of October, 2005, came the defendant, Jason Hull, in person and through counsel Kevin T. Tipton and also came the United States by its Assistant United States Attorney, Paul T. Camilletti, for a hearing on Defendant's Motion to Suppress [Docket Entry 39].

The undersigned received the testimony of West Virginia State Trooper Bryce A. Scarbro and received exhibits in evidence.

## Procedural History

Defendant Hull was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on August 17, 2005. The indictment charges him with Conspiracy to Manufacture and to Distribute Methamphetamine; Aiding and Abetting the Attempt to Manufacture Methamphetamine; Possession of Pseudoephedrine with Intent to Manufacture Methamphetamine; and Aiding and Abetting the Possession of a Firearm in Furtherance of a Drug Crime [Docket Entry 1]. A summons was issued on September 1, 2005, and Defendant was arraigned on September 13, 2005, at which time he pled not guilty to the charges.

## Facts

The undersigned finds the following testimony and evidence credible, and therefore

recommends these findings of fact.

On March 3, 2005, West Virginia State Police Officer Bryce Scarbro presented a criminal complaint to Upshur County Magistrate Juanita E Adam. The Complaint alleged Defendant contributed to the delinquency of a minor. The grounds for the complaint were as follows:

> On Saturday, February 26, 2005, at approx. 1200 hours, the undersigned officer received a call for service from a Tammy Williams. Ms. Williams had filed a complaint a few days earlier of a missing juvenile with TFC M. Anderson. Ms. Williams advised that her daughter, a Natasha Williams, was at a Jason Hall's residence on the Abbott Rd. Ms. Williams advised this officer that she was going to go up to the residence to see if her daughter was there. The accused advised Ms. Williams that Natasha Williams was not there. Tammy Williams then advised the accused that the police were at the bottom of the hill. At this time Natasha walked outside of the residence. The undersigned officer and Sgt. Smith were previously at the residence on 2-25-05 and Mr. Hall advised that the juvenile was not there, but he would not let this officer search his residence. It was then explained to Mr. Hall, that he would be arrested if he did not call the State Police if the juvenile showed up at his residence. The juvenile advised that she was not at the residence at 2-25-05. A statement was obtained by Tammy Williams stating that the juvenile was at that location. Mr. Hall's residence is in Upshur County, WV. Natasha Williams is sixteen years old.

The Magistrate found probable cause and issued the misdemeanor warrant on March 3, 2005. Both the Complaint and the Warrant appear to name a "Jason Hall," although the Warrant contains several typeovers, appearing to change the name from Jason Hull to Jason Hall. There was no address on the complaint or warrant. The Warrant was to be executed "forthwith."[1]

On April 28, 2005, Tpr. Scarbro went to Defendant's residence to execute the arrest warrant. Tpr. Scarbro testified that the delay was due to misdemeanors being "put on the back burner" and

---

[1] Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. The first opportunity offered. BLACK'S LAW DICTIONARY, 451 (Abridged 6th Ed.)

the officers' priority being felonies. There was no particular reason he chose April 28, except that he had the time that day, and there was a deputy available to assist him with the arrest. He traveled to Defendant's residence with two deputies. Upon arriving at the residence, the officers smelled a strong odor indicating a possible meth lab. They went up onto the front porch, where they also smelled the odor of burning marijuana. Defendant came out through the front door to meet the officers. The front door was a glass "storm door," through which Tpr. Scarbro could see a television with a surveillance system attached, monitoring the driveway. Tpr. Scarbro testified he had seen such surveillance systems in meth lab cases.

As Defendant came out of the residence, Tpr Scarbro handcuffed and arrested him and took him to the driveway. As he did so the two deputies entered the residence to perform a "protective sweep." Tpr. Scarbro testified he had been involved with meth lab investigations, and to his knowledge they often involved violence and firearms. He had information gleaned from other officers and the public that indicated there might be loaded firearms and/or booby traps at the residence. Tpr. Scarbro testified he had seen one individual sitting by the television, but no one else, and admitted no one had threatened the officers. He could not testify as to what the two deputies may have seen through the storm door. He did testify that after the deputies entered the residence, one individual ran to a bathroom. At that point the officers were concerned the individual had gone to destroy evidence. Tpr. Scarbro went to get a search warrant for the residence while the other officers watched the residence from the outside. Tpr. Scarbro also testified the odor of methamphetamine and the odor of burning marijuana were indications that a crime was occurring, and believed that alone would have provided probable cause to obtain a search warrant.

A bomb team was called to the residence to check for any booby traps before the officers

3

proceeded with the search. The DEA was also called to dismantle the meth lab.

The officers also proceeded to search automobiles that were covered by the search warrant. One automobile from which evidence was seized was a white Grand Prix. A handwritten inventory shows a cigarette pack with marijuana and methamphetamine was seized from this automobile. The typewritten report, however, indicates this evidence was seized from a black Grand Am. When asked about this discrepancy, Tpr. Scarbro testified he had made a mistake on the later typewritten report. The officers had not searched a black Grand Am, and there was no black Grand Am present. There was a black Dodge Diplomat present. Tpr. Scarbro testified the listing of a black Grand Am was simply a mistake on his part.

Tpr. Scarbro further testified that the name on the arrest warrant should have been "Hull," instead of "Hall," but that he had not known the spelling of Defendant's name at the time. He also did not know Hull's address. He did, however, know who Hull was, and where he lived. He had actually been at Hull's residence earlier looking for the juvenile. Defendant was the same man to whom he had spoken on that occasion. Tpr. Scarbro further testified that, to him, "forthwith" meant "24/7."

Tpr. Scarbro testified that no one in the residence threatened the officers in any way until after they entered. He believed, however, that meth labs were generally dangerous and drug crimes often involved firearms. The officers therefore entered the residence for a protective sweep. Tpr. Scarbro testified protective sweeps were a common occurrence when serving warrants where there was suspicion of drug activity.

Tpr. Scarbro testified that much evidence from meth labs cannot be disposed of by "flushing," although the drugs themselves could be disposed of in this manner.

4

## Contentions of the Parties

Defendant argues:

1) The delay in executing the arrest warrant was clearly unreasonable and the warrant was a pretext for an illegal search of the defendant's home;

2) The arrest warrant is invalid;

3) There was no need for a protective sweep and no exigent circumstances existed; and

4) The search of the black Pontiac Grand Am was illegal.

The Government argues:

1) The officers properly conducted a protective sweep of Defendant's residence and

2) The Property Receipt erroneously indicated items were seized from a black Pontiac Grand Am, where they were actually seized from a white Pontiac Grand Prix.

## Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

### The Arrest Warrant

Defendant argues the arrest warrant in this matter is invalid on its face and any evidence

seized pursuant thereto must be suppressed. The warrant and complaint in support thereof do both name a "Jason Hall," instead of "Jason Hull," and there is no address on either. Tpr. Scarbro testified that, despite the misspelling of his name, he knew who Defendant was. He also knew where Defendant lived, but had not known his actual address.

The warrant clause of the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . persons or things to be seized. U.S. Const. Amend. IV. This requirement is codified in Rule 4 of the Federal Rules of Criminal Procedure which states that a warrant must "contain the defendant's name, or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty." Fed. R. Crim. P. 4(b)(1)(A).

> A mere technical error does not automatically invalidate the warrant. "The true inquiry . . . is . . . whether there has been such a variance as to 'affect the substantial rights' of the accused." *Cromer v. United States*, 142 F.2d 697 (D.C. Cir. 1944)(*quoting Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). A mere inaccuracy in setting forth the date on an offense in a criminal complaint would not appear to be a material or critical variance. *Cf. United States v. Tramunti*, 513 F.2d. 1087, 1115 (2d Cir. 1975) ("error [as to nature of charge was] apparently a clerical one, [and] in no way voids his arrest.").

United States v. Carter, 756 F.2d 310 (3rd Cir. 1985). See also United States v. English, 400 F.3d 273 (5th Cir. 2005)("Technical error does not automatically invalidate the arrest warrant."); McLean v. Mallott, 10 F.3d 806 (4th Cir. 1993)(unpublished) (citing Carter.)("contrary to McLean's assertions, the typographical error in the date on his arrest warrant did not render the warrant invalid."). The undersigned finds the misspelling of the name "Hull" as "Hall" on the warrant and complaint was a mere technical error that does not invalidate the warrant.

The officer swearing out the complaint knew the identity of the defendant and knew his name, just not the correct spelling. He had actually spoken to Defendant at the same residence on

an earlier occasion. The undersigned therefore finds the name "Jason Hall" on the warrant could also be considered "a name . . . by which the defendant c[ould] be identified with reasonable certainty." F.R. Crim. P. 4(b)(1)(A).

The undersigned therefore finds the arrest warrant was valid.

### Delay in Executing the Arrest Warrant

Defendant also argues the delay of nearly two months between the issuance of the arrest warrant and its execution was "clearly unreasonable and the warrant was a pretext for an illegal search of the defendant's home." The Fourth Circuit has held:

> Police officials are required to use diligence in the execution of arrest warrants. They may not hold one unexecuted for an unreasonable period of time in the hope that they may ultimately find the defendant in a house or other building which they would like to search but which they could not lawfully search except as an incident of a lawful arrest. Agents are not required to neglect all other investigatory and enforcement activity in order to execute every arrest warrant, however . . . .

United States v. Weaver, 384 F.2d 879 (4th Cir. 1967). In the present case, the misdemeanor arrest warrant for contributing to the delinquency of a minor was issued on March 3, 2005, and executed on April 28, 2005, 56 days later. Tpr. Scarbro testified that misdemeanor warrants were "put on the back burner." He could not recall exactly what other business he had to tend to during those two months, but testified there were felony arrest warrants to execute and felony reports to file and those were a priority. Tpr. Scarbro also testified he believed the term "forthwith" on the warrant meant the warrant could be executed "24/7."

In Weaver, the Fourth Circuit found that a delay of 16 days between the issuance of the warrant and the arrest was not unreasonable "on its face." The police explained that they had attempted to locate the defendant through surveillance of places he was thought to frequent. Defendant, however, testified that during that entire time, he was living openly under his correct

7

name in an apartment where the officers could easily have located him. Yet the Fourth Circuit noted that during the "comparatively short interval between issuance of the warrant, and its execution . . . agents had been looking for the defendant, albeit unsuccessfully." Here there is no doubt that Tpr. Scarbro knew where Defendant lived, because he had been to the address before. Still, as the Fourth Circuit stated, "Agents are not required to neglect all other investigatory and enforcement activity in order to execute every arrest warrant . . .," and significantly, as Tpr. Scarbro testified, the warrant at issue here was for a misdemeanor, a lower priority than felony warrants. In United States v. Payne, 423 F.2d 1125 (4th Cir. 1970), the defendant argued officers had delayed arresting her for two days, purposely waiting until a day "when they had reason to believe the defendant would be engaged in the commission of another offense." In fact, there was no doubt that the officers were aware Defendant would be taking heroin to a prisoner in a reformatory the day they decided to execute the warrant. The Fourth Circuit held:

> The duty to attempt with reasonable promptness to execute such warrants cannot be so closely confined or strictly applied. The exercise of reasonable diligence without undue delay does not inexorably call for absolute immediacy. Within reasonable limits of time and place, the officers charged with the execution of an arrest warrant are entitled to consider their other duties, work schedules and convenience.
>
> There was nothing pretensive about the issuance of the arrest warrant on a felony charge here. It was not designed to give an appearance of legitimacy to an otherwise unlawful search. Indeed, there was probable cause to believe that the defendant was engaged in the commission of a felony at the time of her arrest, so that an arrest for that offense without a warrant, and an incidental search, would have been lawful.

Id. Similarly, the undersigned finds there was "nothing pretensive" about the misdemeanor warrant for Defendant's arrest on charges of contributing to the delinquency of a minor. The warrant is valid on its face, was supported by probable cause, and Tpr. Scarbro himself had investigated the mother's complaints. Further, Tpr. Scarbro's testimony regarding his reasons for not having

executed this misdemeanor warrant for 56 days is credible. The undersigned does not encourage or condone such delay, but finds the delay was for the reasons stated by Tpr. Scarbro, and was not for an improper purpose, and therefore finds the arrest was valid.

### The Search

Having found the arrest valid, the undersigned next turns to Defendant's argument that there was no need for a protective sweep and no exigent circumstances existed. Tpr. Scarbro testified that the deputies entered the residence to perform a protective sweep. Protective sweep searches of buildings incident to the arrest of persons in or immediately outside a dwelling or building are permissible to protect the safety of the arresting police officers. See, e.g., Maryland v. Buie, 494 U.S. 325 (1990); Mincey v. Arizona, 437 U.S. 385, 392 (1978); United States v. Cephas, 254 F.3d 488, 491 (4th Cir. 2001); United States v. Gwinn, 219 F.3d 326, 332 (4th Cir.), cert. denied, 531 U.S. 1025 (2000); United States v. Bernard, 757 F.2d 1439 (4th Cir. 1985); and United States v. Baker, 577 F.2d 1147 (4th Cir. 1987). In a case cited with approval by the Fourth Circuit, the Ninth Circuit held:

> Officers who have effected an arrest at a residence may conduct a limited search for persons who may destroy evidence or pose a threat to the officers' safety, if the officers can point to articulable facts that support their belief that others may be on the premises.

United States v. Hoyos, 892 F.2d 1387 (9th Cir. 1989). Here, Tpr. Scarbro testified he saw one other person in the residence as he was arresting Defendant (there were actually three other individuals in the residence, but Tpr. Scarbro had not seen the other two, and did not know whether the two deputies with him saw them). In Hoyos, as in the case at bar, the defendant argued the protective sweep exception to the search warrant requirement does not apply if the arrest occurs outside the residence searched. The Ninth Circuit found the this argument unsupported by any authority. Id.

9

at 1397:

> If the exigencies to support a protective sweep exist, whether the arrest occurred inside or outside the residence does not affect the reasonableness of the officer's conduct. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another. The likelihood of the destruction of evidence is the same whether the arrest is indoors or in an outside area within the sight or hearing range of an accomplice within the residence.

Id.  In an unpublished opinion, the Fourth Circuit held "a protective sweep is justified by exigent circumstances when the arrest itself occurs outside the premises." United States v. Cobbins, 943 F.2d 50 (4th Cir. 1991) (citing Hoya).

Tpr. Scarbro testified that when the officers arrived at the residence, there was a strong chemical odor, such as from a meth lab. While legitimately on the porch, he could smell burning marijuana. He could see through the glass storm door that there was a surveillance system in the house, with a camera trained on the driveway area, and the television showing the driveway. He testified this type of surveillance set up was characteristic of a methamphetamine manufacturing operation. The undersigned recognizes that the presence of the surveillance system would also indicate that anyone in the residence would have had advance warning that police officers were approaching. Tpr. Scarbro saw another individual in the residence near the television. He did not know whether there were more individuals inside. Tpr. Scarbro also testified that to his knowledge firearms are typically associated with drug manufacturing operations. In addition, he understood that there may be loaded firearms or even booby traps present. He testified that based on all the above information, the deputies performed a protective sweep.

The steps to determine whether exigent circumstances may justify a search without a warrant are:

(1) The degree of urgency involved and the amount of time necessary to obtain a warrant

(2) The officers' reasonable belief that the contraband is about to be removed or destroyed

(3) The possibility of danger to the police guarding the site

(4) Information indicating the possessors of the contraband are aware that the police are on their trail, and

(5) the ready destructibility of the contraband.

U.S. v. Kelly, 650 F.2d 526, 528 (4th Cir. 1981). The undersigned finds the officers here reasonably believed there was contraband on the premises; knew there was at least one individual still inside the residence; and knew that any individuals inside the residence were aware in advance that police were approaching the residence. The undersigned therefore finds the officers had a reasonable belief that the contraband was about to be removed or destroyed, and also reasonably believed there was the possibility of danger.

Defendant argues that evidence of a meth lab would not be easily "flushed" or otherwise disposed of. While this may be true of much of the evidence associated with a meth lab, it is certainly not true of other evidence, including the drugs themselves. Therefore the undersigned finds the officers could reasonably have believed evidence might be destroyed or removed before a search warrant could be obtained.

For all the above reasons, the undersigned finds the protective sweep of the residence was justified. There is no issue regarding the scope of the protective sweep, therefore any evidence obtained from that search and the search pursuant to the subsequent warrant is admissible.

### The Search of the "Black Grand Am"

Defendant also argues that the search of the black Pontiac Grand Am was illegal. According to the initial discovery provided to the defendant, there were items taken from a black Pontiac Grand

Am located in or near Defendant's driveway. Neither the search warrant, however, nor Tpr. Scarbro's affidavit in support of the search warrant lists a black Pontiac Grand Am. Defendant also notes he does not own a black Pontiac Grand Am. The Government argues the Property Receipt erroneously indicated items were seized from a black Pontiac Grand Am, whereas these items were actually seized from a white Pontiac Grand Prix. The white Pontiac Grand Prix was listed on the warrant.

Tpr. Scarbro testified that the typewritten report that indicated items were taken from a black Grand Am was incorrect. An earlier handwritten inventory indicates that the items the subsequent report said were taken from the Grand Am were actually taken from a white Grand Prix. Tpr. Scarbro noted there was also a black Dodge Diplomat present that was also searched, and he simply made an error in his typed report. He also testified there was no search of black Grand Am at the scene and, indeed, there was no black Grand Am present at the scene. He did search a white Grand Prix, the items listed were taken from the white Grand Prix, and the Grand Prix was listed on the search warrant.

The undersigned finds Tpr. Scarbro's testimony regarding the erroneous listing of a black Grand Am credible. The testimony is corroborated by the handwritten inventory which indicated the items were seized from the white Grand Prix, the testimony that there was no black Grand Am present, and Defendant's claim that he did not own a black Grand Am. The undersigned therefore finds that, consistent with the testimony and handwritten inventory, the items were seized from a white Grand Prix which was listed on the search warrant, and the evidence is therefore admissible.

## RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Motion To Suppress

[Docket Entry 39], be **DENIED**.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge**.** Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 19 day of October, 2005.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

13